1754.7 USA v. John Maddux Jr U.S.A. v. John Maddux Jr Parkinson's disease, 30 minutes 10 minutes, reside for extra 15 minutes Ms. Elber, Dr. D.L. Poplar Napolitano, Mr. Baker Good morning. I've reserved two minutes for rebuttal. And whom are you representing? I represent Christina Carman in this matter. Very well, thank you. And Ms. Carman has two appeals actually. The first one relates to her motion to dismiss count one and her subsequent conviction on that count as well as her sentencing. And the second relates to the addition the amendment of her judgment to add a money judgment. I'm going to address the count one issue, the motion to dismiss and the judgment of acquittal on count one and the money judgment issue. Mr. Wicker is going to address the sentencing issue as it overlaps for both Mr. Maddux and Ms. Carman. The argument is the same, so he's going to address that. So you're the one of the three lawyers who's going to address the question whether as a matter of law this constituted fraud, wire fraud? Yes. Okay. Correct. So just as a start, I think most, and I think that's probably the most important issue is with respect for Christina Carman with respect to just count one. So count one is just a Jenkins Act omission? It is. From 2008 to 2010, June 2010 when the Jenkins Act was still in effect, it relates to a company called Your Tobacco, Your Kentucky selling cigarettes, untaxed cigarettes into other states. And we live in an age where there are all kinds of online sellers now. That was a mail order company, but to draw an analogy where companies are based in one state and sell into other states. This case is only different because with regard to the sale of cigarettes there's one additional requirement under the Jenkins Act which requires the filing of a report indicating to the state that you're selling into who you are and where you're from and what you're selling. And then to file a monthly report indicating to whom you sold the cigarettes to. And in this case the problem was only that the reports weren't filed with respect to count one. That's the omission that they say was counted as the misrepresentation or whatever you want to call it. Right. So to have a mail or wire fraud violation you have to have a misrepresentation or an omission. And I don't think there's any question in this case that there were no specific misrepresentations. So this is an omission case. But to have an omission case you have to have a duty to speak. And in this case Ms. Carmen individually did not have a duty to speak. The Jenkins Act requires the seller to file the reports monthly and if you look at the definition in the statute itself it says a person, but when you look at the definition of a person it's defined as... Boy, that's a thin skirmish line for what they have coming after you here if it's just the corporate form that you're hanging this on. Well, Ms. Carmen was a 50% owner of the company, but pretty much in name only. She handled the administrative, the HR responsibilities. She packed some cigarettes. She was not making the decisions. So she was not in entities or in companies or in circumstances where you have an entity and an individual controlling that entity entirely. I could see that argument. But in this case Ms. Carmen did not have any decision making authority as to how the company handled its legal requirements. Okay. I thought the government had a pretty facile response, frankly. I mean pretty, you know, like right on to be candid with you on this corporate form issue. What about, I mean just what about the question whether a Jenkins Act omission can be fraudulent? I mean there really seems to be a troubling irony here that the Jenkins Act itself says that this very omission is a misdemeanor, punishable by like six months or something. And in this case that same omission is now the basis for a wire fraud claim that is a serious felony. Why don't you reiterate your argument about why you think that omission cannot be the basis for a wire fraud claim when I guess the government's logic seems straightforward. The state would have relied on this and, you know, they were deprived of tax revenue. So what's your answer to that? Well, I don't think it meets the elements of mail or wire fraud. As I mentioned, I don't think that there was a duty to speak for the omission. How is there not a duty to speak? Okay, let's say that, let's say we pierced the veil. You know, just hypothetically. Okay. She had a duty to speak. I mean she's supposed to file the form. So that's a legal duty, isn't it? Well, I think the entity, the seller, Christina Carmen wasn't the seller. The entity was the seller. And I think in the cases cited by the government, the Brewer case, for example, there was a determination that the individual, Ms. Brewer, was the seller. So I think that that's a distinction here. I think in other cases, the other cases cited by the government, the Melvin case, the DeFiori case, there are other actions, other activities that are going on that would lean more towards mail or wire fraud. Other deceptive acts. There were no other deceptive acts here. You know, the whole nature of mail and wire fraud is that it's a scheme to defraud. And you're looking at whether an individual participates in that scheme to defraud. So, while individual responsibility is important, it's not individual responsibility in the sense of she did every single thing she might have done. It's individual responsibility in terms of joining a scheme with a particular objective. I mean, it's a little like conspiracy. Would you disagree with that? No, and it was charged as a conspiracy. Well, that's true too. In this case. So, no, I understand your point. But I think that the scheme, there has to be an intent to deceive along with that. And in this case, there wasn't an intent to deceive. The tax regulators knew what they were doing. In this case, they were. They didn't know the cigarettes had been sold in their state though. They did because they were sending letters. But they didn't know the names and addresses of the purchasers. No, not specifically after the investigation started. But it also has to be material. And I think that there's a question as to whether that, if they had that information, if they would have done anything with it anyway. I think in certain cases... Well, that may not be the test of materiality. I mean, whether or not state regulators pursue every possible violation is not necessarily the test for whether it's material or not. No, the test for materiality, you're correct. I agree with that. I think the test for materiality is whether it weighs or has an influence on the person who receives the information. And I think in this case, the tax regulators knew what they were doing. They were sending letters letting them know, hey, we know that you're selling tax. And yet they did nothing. I mean, presumably there was some state... What were they supposed to do? I mean, they're not going to raid somebody's house. They're in a different state. No, but there are civil remedies under the Jenkins Act they could have taken. There are also presumably in their individual states regulatory actions that they could have taken to enforce the requirement to file the necessary report. Why don't you think there was an intention to deceive the states? That might be your best argument, why your client wasn't trying to deceive the states. I think my client was trying to sell more cigarettes. Yeah, but isn't part of their business model deceiving the states to be unaware that people who should be paying taxes aren't? I think it's important, perhaps important to the scheme, but not material to the person upon... The materiality goes to the person who was purportedly deceived. Okay, states. In this case, the states. And why aren't the states being deceived by the failure to file the Jenkins Act and now a form? Because they weren't acting in secret. They were out there sending out flyers. They had a registry of approximately 8 million smokers. They were sending out flyers to 8 million people. They weren't acting in any kind of secret, which is different from what some of these other cases were. It's not whether their actions were secret, it's whether the purchasers' names and addresses were known to the states. You're kind of suggesting they had to go on this, be like, I don't know, just chasing a thousand ants around the backyard. I don't know how they would really do that. No, that's absolutely true. They did not have the names and addresses. All right, you'll have your rebuttal time. Thank you. Thanks. Good morning, Your Honors. Greg Napolitano for the appellant, Michael Smith. I'd like to reserve two minutes for rebuttal. We've obviously joined in a number of the arguments that were raised by co-counsel and the other defendants in this case. And the irony is not lost on me that what I'd like to take my time speaking with you about this morning is why we ought not have been with those folks in the first place. The joinder that was permitted in this case was permitted pursuant to what appears to be the district court's applying standard that was not applicable under the instances before it. As I cite in the briefing, the district court articulates the 8A standard. We are proceeding under the 8B standard. They are related. They are certainly nuanced in their application. And it is not lost on me, Your Honors, that our burden under both standards is very high before the principal court and certainly before this body. But we think this is the case in which the government may have cast the net too broadly. Your Honor, Judge Kethledge, you asked a question about intent. And the piece of evidence or the element of which the government lacked its most evidence against Mr. Smith was on that point of intent. Indeed, they brought to bear only three somewhat discreet pieces of evidence that they argued to the jury justified that he had the intent sufficient to join these three discreet conspiracies as articulated in their indictment. The predicate offenses themselves, the Jenkins Act offenses, my client was not charged with any conspiracy to violate the Pact Act. In fact, the government indicates in its briefing that it did so because it simply lacked any evidence to be able to demonstrate that. So the Jenkins Act violations themselves being somewhat subject to scrutiny as to whether there is enough sufficient for that violation, which in another form would be a misdemeanor can provide the trappings to support these conspiracies, is even further exaggerated when it's brought to bear upon my client, who was not charged with a principal violation of those statutes at all. Which statutes? I'm sorry? Which statutes? I'm sorry, I apologize. The Jenkins Act. He was not charged with a principal violation of the Jenkins Act. But he was part of the scheme. Well, we would argue he wasn't part of the scheme. That was the intent of the government. But the basis for his joinder was that his offenses were interrelated to those of the other defendants and they were all part of a general scheme to sell untaxed cigarettes and all who were involved were pooling money together to buy the cigarettes from overseas suppliers. Is that correct? That is what the government alleged. Is there some specific factor about this case other than that he's not charged with a Jenkins Act violation that makes you think that the joinder was problematic? Well, we've got three factors. First of all, procedurally, the record before this body shows the district court applied the wrong standard. That raises alarm. Second, so there isn't anything in the record upon which this court could rely to demonstrate that the district court exercised its discretion. What is it factually about this case that makes you think your client should have been severed? The government couldn't have approved intent without his presence in this broader trial is our position. The scope and breadth of the many charged conspiracies had a spillover effect upon my client. Well, that is pretty much common to any defendant who is charged in a conspiracy or as part of a scheme to defraud. And under the law, something more is generally required. I think there's a differentiation factor here in that we're attempting to balance, at least in my perception, is the economy, the need to not put the government through unnecessary paces to try a whole bunch of different cases where it could try them all together and against the prejudice that might be visited upon an individual defendant. There's nothing specific to your client. Well, there is. And that is because I think the burden upon the government here would have been minimal to try this case against my client. That's the differentiation. If this were a contraband case, if this were a drug case, the cases that we ---- It would be unusual to try your client separately under these circumstances. Indeed. But I think it would be a one-element trial. Look, most of this and ---- The test is not whether it's easy or not for the government. Well, I don't mean to suggest whether the test is whether it's easy or not. But one of the relevant factors is what is the burden upon the government occasioned by an absence of joinder or severance under Rule 14 analysis? And the government's burden here would not have been terribly high whatsoever. Most, if not all, of the facts ---- They still would have had to prove the entire scheme. Well, they would have had to prove the intent, and they wouldn't have been able to prove the intent. Well, they couldn't have done that without proving the entire scheme. Well, I ---- And then proving that he knowingly joined it and proving what his role was. So it's the same proof. Your Honor, respectfully, the entire scheme was out in the open. This was ---- That's why I try to differentiate it from contraband. This isn't the selling of narcotics or the selling of banned substances. This isn't even the black market selling of lawful products. This is the selling of lawful products in a lawful manner. What makes it ---- What the government contends made it criminal was the failure to do so in conjunction with some scheme to violate the Jenkins Act. So for purposes of demonstrating that at trial, there really wasn't any dispute. My client was selling cigarettes. My client was sending money to the individuals alleged in the indictment. My client was receiving the cigarettes in exchange for that. This isn't a situation where you have to prove the presence of the drugs or the movement of the drugs or ---- That's all out there. The only issue for the fact finder to determine is whether my client possessed the requisite criminal intent to do so as a part of a scheme, as Your Honor has outlined it. That's the issue. It looks like there's plenty of evidence to support the idea that he knew that they were not doing the Jenkins Act reports. I mean, it seems pretty easily a jury could find that. I mean, am I wrong there? Well, I don't know that we get to make that assessment, Your Honor. I think that that's part of the conundrum that we're facing is, you know, we bear frequently as appellants the burden of trying to second guess what a jury would have done in circumstances that didn't play out. The point is that would be a thing for the court to have considered. Indeed. I concede that. And I don't know that we know whether the court did that on this record. And we had the benefit of knowing the district court would be in a position of only knowing what the government intended to show. We had the benefit of knowing what the government did show. Indeed, but the analysis is limited to what is on the four corners of the charging document. And both you and the district court knew that at the time. I see my time is about to expire. I appreciate the opportunity. Thanks. Good morning, and may it please the court. My name is Kent Wicker, and I represent John Maddox, who is contesting only his sentence today, and more particularly the computation of loss for his sentence. I'd like to reserve two minutes for rebuttal. The computation of loss here should have begun with an examination of what exactly it is that has been lost by the actions here in this case. And what was lost was not tax revenue, because John Maddox did not owe tax revenue. What he deprived the states of was information which they could have used, perhaps, to Why doesn't, I mean, if you're saying that, well, I'm sorry, you go ahead and I'll jump in at a better time. Okay, certainly. But what his obligation was, was to make filings under the Jenkins Act. Don't you think that the effort, I don't expect you to have to agree, but it seems to me that there's a strong argument that the evidence supports it, that the intent here was not simply not to give out information, but was ultimately to deprive the government of its revenue. Well, the intent, I believe the evidence supports that the intent was to sell cigarettes. Well, sure. I mean, there was a profit motive on the part of the defendants. But, Your Honor to carry that intent out was through this particular scheme. And the Supreme Court addressed this very kind of intent issue in the Hemme case, which was a civil case, but involved the same kind of failure to make filings under the Jenkins Act. And the court ultimately found that there was no proximate cause between the failure to make filings and the failure of the states to collect the taxes. Because the intent was not, they were fairly indifferent about whether customers paid the taxes. I mean, so that's a causation issue, not an intent issue. There's so much paper in this case, I can't find anything. Yes, sir. I mean, I thought there was another link in the causation chain between withholding the Jenkins information. I mean, wasn't the victim not the one that was entitled? It was the city, right? The only difference there. It should have been disclosed to the state, but unlike this case, the victim there was the city. And the court said you really need to stick to the first step in that causation line. Right. Well, victims in this case are city governments and locality governments as well. A number of the entities that could have collected taxes were local governments, and that amount is included in the $48 million that was assessed against my client as well. And what the court said in the Hemme case was that we usually only look to the direct chain of causation. Right. And where it's interrupted by the independent decision of some third party, like a customer who decides to pay taxes or not, then that breaks the chain of causation. So are you saying under Hemme then that the local government interests lost revenue? I'm not sure exactly what they would have been, but those should not have been counted? Those certainly should not have been counted. But I believe the state government's lost tax revenue should not have been counted either. Why? Because that's different than what the court was saying in Hemme. Well, there are two reasons. One is the causation reason because the causation, the chain of causation, is interrupted by the decision of a taxpayer to pay or not. If the taxpayer has the obligation, he can decide to pay it. We're not determining causation in a civil case. We're determining intended loss in a criminal case. And we've got a whole different set of rules about that. Well, actually, the district court did not rely on intended loss. He relied on actual loss. And that's the other problem in the case is the math problem. The judge assumed a $48 million loss. And to get to that number, he has to assume that because of the actions of not making Jenkins Act filings, we have gone from a state of affairs where every single dollar would have been collected by the states to a state of affairs where not a single dollar will be collected by the states. As you said before, Your Honor, states, even if they have all this information, they have to decide whether it's in their best economic interest to chase the ants all around the backyard. And there was no evidence that these states, even if they had the information, would have taken any effective means to collect that from the customers. I guess, I mean, your client failed to file the forms that would allow the state to pursue the revenue or send letters and everyone. I mean, why wasn't it your burden to show that they would not have done that? Why is it the state's obligation to show that they would have? Well, what we argued, Your Honor, was that the states only had a temporary deprivation of information. They had all the names and addresses by 2012 that they learned in the course of the investigation. Well, if you're talking about, you know, it all came out after the feds busted the scheme, I don't think that really helps you. No, that's not what I'm talking about, Your Honor. What I'm talking about is that the government has the obligation to prove the amount of loss. And they just proved it by an assumption, an assumption that, well, if they would have had the information, everybody would have paid their taxes. We don't think that's realistic. Didn't some state witnesses testify that they would have pursued the buyers had they gotten the information? Some of the states said that they were going to pursue the buyers now that they had the information, that they had waited until the investigation was over, but now that they have the information, they're going to pursue the buyers. Wouldn't any extent to which a governmental entity could not collect the tax, wouldn't that be your burden to show? Because the government would have the burden of putting on evidence as to the, or putting evidence in the record from which the court could find the total amount of intended loss. And then it would be your burden to show what is in effect mitigation. And you didn't do that, did you? Well, we did not call witnesses in mitigation, Your Honor. But again, this was not an intended loss case as found by the district court. This was an actual loss case. Well, I mean, we can recharacterize what the finding was as an intended loss finding, whatever it was termed, right? Yes, Your Honor. But let me address that and tell you why this was not appropriate as an intended loss case, either in the district court or on appeal. As you know, the guidelines definition of intended loss, the government has to prove that the defendants, quote, purposely sought to inflict the loss on the victims. And we talked about in the district court that there was no evidence of a purposeful intent to impose a particular loss on any particular victims. There was ample evidence of indifference about whether the defendant's customers paid attention. That was probably a part of the jury argument. Well, and our argument at sentencing as well. In the sentencing hearing where we argued this motion, the court didn't make a factual finding on that issue. He went to the actual loss approach. You'll have your rebuttal time. Thank you, Judge. May it please the Court, John Pelletier on behalf of the United States. The conduct of the defendants in this case falls squarely within the type of conduct that's prohibited by the mail and wire fraud statutes. Those statutes require a scheme to defraud and the use of the mails or wires in furtherance of that scheme. A scheme to defraud is a plan to deprive another of money or property interest through deception, through deceit. The deceit can be accomplished in any number of ways, as this Court and others have made clear. Among the ways deceit can be accomplished is silence and omission. And courts are also uniformly clear that an omission, a deceptive omission, is an omission that is a failure to speak in the face of a statutory duty to provide information and to disclose. That's why every court that has addressed this issue, these precise factual circumstances, have held that the failure to provide the information required by the Jenkins Act can be an actionable omission under the wire fraud statute. Let's just say that authority isn't overwhelming in its persuasive force. I mean, we're talking about a 1975 case whose reasoning is fairly casual and a few cases that sort of follow that lead. So I guess what I'm saying is I would ask you today to sort of prove that proposition rather than rely upon that. Well, from first principles, as I said, a scheme to defraud is a plan to deprive another of money or property through deceit. Then the question is what is the deceit that's actionable under the fraud statutes? Right. And this court has made clear that it could be an affirmative false statement or it could be silence. And all courts have been clear it can be silence. Then the question is, well, when is silence actionable? When is silence deceptive for purposes of the mail or wire fraud statutes? And we've cited the cases. We're not aware of any case to the contrary saying that the failure to disclose information in the face of a statutory duty to disclose that information is actionable deceit under the fraud statutes. So, I mean, just again, just give me one or two examples of cases that say just total silence. And I don't see Pasquitino to be total silence. So cases other than Pasquitino where some total silence is an omission that gives rise to wire or mail fraud. Well, I think in the brief we cite the Colton and Woods cases and the Woods I think cites it relies on another product. What were the facts, basically? I mean, just real quick. I believe Woods was an individual who was soliciting, was doing telemarketing and soliciting, I think, customers over the phone and did not provide information that was required under FTC rules about, I think you have to tell people that they don't have to purchase the product in order to be part of a. Okay, yeah, right. Exactly. You see it constantly. Yes. I believe the case that Woods relied on is a prior Ninth Circuit case which required a report to be filed under the copyright statute. And I believe Colton was just a, was mere silence with no statutory duty. Is there any supreme, I'm sorry, you go ahead. A classic kind of a case would be a failure to disclose assets or other material information when that amounted, for example, to more than a violation of 18 U.S.C. section 1001 but involved a true scheme to the fraud. I'm not sure I follow your question, Your Honor. I'm sorry. Well, the context in which I have seen omission cases in mail and wire fraud cases, my district, prior district court self is coming out, has been failures to disclose material information. For example, assets or whatever it is. It's when the false statements or the false statements that are omissions amount to a scheme to defraud and not just a single act. Well, in our view, the misrepresentations here, which were the failure to, they're not affirmative representations, they're the failure to provide information, is deceptive because it doesn't allow the question. What I was trying to do is kind of bring forth the typical omission case, but you're not taking my helpful. She's showing that there are kind of cases in the heartland of fraud that involve omissions. Yes, absolutely. You've assuaged my concern on that. I've been constantly. I was calling you a lifeline. I agree, Your Honor, to say correct, Your Honor. I apologize for not taking your lifeline, Your Honor. Turning to loss, unless you have additional questions. Are you talking about you're going to damages or whatever, Mr. Maddox's issue? Yes, unless you have additional questions. I'm nowhere. No. I'm really, I have to tell you, I'm just very uneasy about this case because, I mean, here we have this federal criminal law, which is itself just already extremely pervasive. Justice Kagan, among others, has noted that. So you guys have a ton to work with in the federal criminal law. And we have, and my concern is specific to the Jenkins Act-based, I guess, count one. Is that count five as well or just count one? It's only count one because the others are also based on international and the failure to. Right, right. And, I mean, there, you know, the Jenkins Act specifically, as you know, says that this very omission is just a misdemeanor. And now that same omission is the basis for a much bigger, more general felony under wire fraud. Your Honor, it's often the case and very common that the conduct perpetrated by an individual defendant violates more than one criminal statute. And, you know, it's common, for example, to have a lesser included offense. But yet additional conduct by that same defendant takes it out into a greater criminal offense. And that's what happened here. Now, the Jenkins Act only requires that you provide reports. And it doesn't have a, when it, prior to the PACT Act, it didn't even have within it a mental state requirement. It didn't. Right. So, you know, a Jenkins Act violation, if you were prosecuting the misdemeanor, you'd have to show that they sold cigarettes out of state and they did not file the form. Is that correct? Yes. And your wire fraud, the conduct or omissions giving rise to this wire fraud offense, as I understand it, is sold cigarettes out of state, failed to file the form. That's it. No, but there's an important component, is the intent to defraud and deceive. Now, you can file. Same intent. It would be the exact, I mean, why, I mean, it's like why, the reason you wouldn't file them unless you just forgot or lazy is because you want to get the same competitive advantage that these people wanted to get. But failure to file it because you're lazy or you're forgetful is covered by the Jenkins Act, as it was previously enacted. But what's different and what distinguishes a mere failure to file these because of laziness or forgetfulness is an intent to deceive and to deprive another of their money or property through deception. And that is the government's proof beyond a reasonable doubt. We had to prove a plan to deprive another of money or property through deception and that these individuals possessed that mental state. That's far more than the Jenkins Act requires. And that's why the wire and mail fraud statutes are a more serious offense. Jenkins Act is strict liability as to failure to file the form? I don't know that there were decisions prior to 2010. But if you look at the. If you know, yeah, what does the statute itself say? The statute just said any person who sells or transfers for profit cigarettes in interstate commerce has to file these reports. And then it says for the penalties, it says whoever violates any provision of this chapter shall be guilty of a misdemeanor. Now, after the PACT Act was passed, it's. What statutory section are we talking about? That used to be 377 was the penalties. And it said whoever violates any provision of this chapter shall be guilty of a misdemeanor. And the provision, the prior provision, which is 376, said any person who sells cigarettes into a state must make these filings. There's no there's no mention of any kind of mental state requirement, which is contrast with the the that that those same provisions after the passage of the PACT Act. And now it says that there are mens rea and the PACT Act. It says knowingly your honor. It says 377 a criminal penalties. Number one, except as provided in paragraph two, whoever knowingly violates this chapter shall be in prison for not more than three years. Now it ups the penalty before it was six months. No mental state requirements specifically in the statute after 2010. It's three years plus a knowingly requirement. Well, OK. And why why isn't post PACT Act conduct then governed by that provision rather than, you know, the more general wire fraud? They both have a mens rea. Is it just the different mens rea, the different intent that makes the wire fraud a different animal? Well, to be clear, the only fraud charges that are challenged here are only pre 2010. But in our view, the same reasoning applies that this is still just a mere knowing requirement. It's a lower mens rea. It's a lesser offense as opposed to an intent to fraud, which is a specific intent offense. It requires the government to prove beyond a reasonable doubt that they harbored the purpose and intent to deprive another of money or property through deceit. And that's and that's the burden the government has to carry. And it's a burden that's hard to carry and that we did carry in this case by overwhelming evidence. Unless your honor has it. Yeah, I guess it just bothers me. But, you know, I see the logic of your response. Thank you. Turning to loss. I just want to briefly discuss that in our view, HEMI does not apply in this case. It doesn't provide any instruction about how to calculate loss under the guidelines. The guidelines refer to or define loss as the reasonably foreseeable pecuniary harm. HEMI involved the causation standard in the RICO statute, which requires that the federal plaintiff suffer damages as a result of the predicate offenses in the RICO statute, which in the HEMI case were wire fraud and mail fraud. Now, the majority or the plurality. Proximate cause standard over there. It's proximate cause. The difference between that and reasonable foreseeability. Well, if you read HEMI, the majority and the dissent or the plurality and the dissent, they make clear that proximate causation doesn't have one definition that applies in every circumstance. It has different definitions that apply in perhaps different statutes. Perhaps common law courts might adopt different standards. What was it there? The RICO and just first step or something? In RICO, the Supreme Court made clear, and what the plurality said is, so among the formulations that courts have applied are a direct relationship or reasonable foreseeability. And the court made clear those are different. And the court, the plurality, adopted a direct relationship. And the dissent said, no, we think it should be reasonable foreseeability. I don't think that there was any. Now, the plurality didn't address whether it would have reached a different conclusion on reasonable foreseeability. But I don't think that there's any. It didn't seem that the court would reach any different conclusion. I think the justices seemed to be in agreement that under a reasonable foreseeability standard, there was causation in that case. So you say there's no carve out for state and local because those are reasonably foreseeable. And the carve out in HEMI or the holding there as to the city is an opposite because these, the direct relation test? Absolutely, Your Honor. And the guidelines make clear, the Sentencing Commission, in fact, made clear when it adopted the loss standard that it was adopting reasonable foreseeability and not direct relationship. In Amendment 617, and this is Appendix C of Volume 2, in explaining the reason for adopting this reasonable foreseeability standard, the Commission said, the Commission decided not to use the term consequential damages or any similar civil law distinction between direct and indirect harms. Rather, the Commission determined that the reasonable foreseeability standard provides sufficient guidance to courts as to what type of harms are included in loss. So the Commission really basically decided not to go with the type of direct relationship approximate causation standard that the Supreme Court in HEMI adopted in the RICO context and instead adopted reasonable foreseeability. Well, I'd like to ask you about the jury instruction on materiality. I mean, it's, I understand your arguments about, you know, construed as a whole, common sense and so on, but, you know, still the meaning of these words in the English language do have a place in the jury instruction analysis. And it seems to me that the sentence that was added from the government's proposed instruction, as I understand it, namely, a material omission such as a failure to file required reports may constitute a misrepresentation or concealment under the mail and wire fraud statutes. The contingency, the may there, concerns whether the omission to file the report is a misrepresentation. That contingency, as I read this, does not go to whether the omission is material. And it does seem to me that this wording would strongly indicate to the jury that a failure to file required reports is a material omission. And the thing they need to figure out is whether it's also a misrepresentation. What am I getting wrong? Well, certainly the, that sentence could have been worded better in our view. Sometimes it's, you know, to the point where it's wrong. Well, I think that we, in our view, you have to look at that one sentence in light of all of the, in the context of the instructions as a whole. I am. And what do we learn from that context that would disabuse one of what seems to be the straightforward implication here? Well, the court was, the jury was instructed that it had to find a misrepresentation or concealment. And that the misrepresentation or concealment had to be material and it defined materiality. And then it went into that statement, which in our view was intended to say that a concealment or misrepresentation can take the form of a failure to comply with the statutory disclosure requirement. It didn't intend to countermand the other instructions saying that you've got to find materiality here. I don't doubt that it didn't intend. I just wonder if it might have had that effect. Well, in our view, taken as a whole, we don't think it reasonably has that effect. But we also, this should be reviewed under plain error. And it's the defendant's burden to show that her substantial rights were affected. And in our view, she's failed to meet that burden. You have the witnesses, and Nieder itself, which establishes the materiality element of wire and mail fraud. The court held that the total failure to instruct the jury on materiality, in that case, the court clearly took materiality away from the jury. Netter, N-E-D-E-R. So in that case, in the Supreme Court case, the jury was not instructed at all about materiality. And the court found that it was harmless. And in this case, it's the defendant's burden to show her substantial rights were affected. And here, no reasonable jury would have reached any different conclusion, even if you assume that the court took materiality away from the jury, which we don't think was the case here. But even if you assume that, no reasonable jury would have reached any different conclusion. The several witnesses from the states all testify that these reports matter to them, that they used these reports, and they would have used these reports to try to collect taxes. The evidence established that the inability of the states to collect the taxes was central to the scheme here. It was the linchpin of this scheme. They couldn't have sold these cigarettes and formed and operated this business in the manner they did without the states not being able to collect the taxes in that matter. And in fact — I understand your argument. I got it. I don't mean to keep asking questions if others have questions. But on the forfeiture issue, who's raising that issue again? Can you remind me? Ms. Carmen is raising the forfeiture issue. Okay. And you say this is governed by 981A2A. You say this is an inherently unlawful activity, selling these cigarettes, as opposed to — cases involving lawful goods sold in an illegal manner is A2B. This judge said A2A, right? Why isn't this A2B? I mean, I know there's a gazillion decisions that everybody had to make here, so I don't mean to imply that everything, you know, is terrible. But, I mean, cigarettes are lawful goods. They're not methamphetamine. And they didn't put a stamp on them. That would seem to be classic, just unlawful manner of a lawful good. Well, it doesn't turn merely on the fact that something is lawful. For example, food stamps are lawful. But the courts, the Second Circuit held that frauds regarding food stamps falls under the illegal goods or illegal acts. I don't know. Food stamps seems like a weird example. If you had a case where they're selling, you know, Jack Daniels bourbon, and they didn't pay some tax, and that was deemed to be inherently unlawful activity, selling the bourbon, then that would be persuasive, maybe. I think application of these two provisions turns on the individual facts of the case. And here you have a highly regulated area, cigarettes, which the evidence establishes need to be stamped and sold with taxes. The various states require that they be taxed before they go in. It's a highly regulated area. And the manner in which they sold them was illegal. And we've looked through the cases that have applied these two provisions. The only cases we've found that apply the second, the B provision, are securities fraud cases where someone sells securities, and the courts have concluded that securities are lawful. Or I believe that in the legislative history, it suggests that what it was intended for would be, for example, a bribe, a bribery situation, where if I were to pay a bribe to someone to get a contract to provide goods to them, that would be a bribery. And I've actually provided the very goods that they wanted. That would be reduced. It seems like A2A is, that says illegal goods, and then A2B says illegal manner, right? And so it seemed like we first look at the goods themselves and say, are those inherently illegal? Are those illegal goods? Just the goods before there's any transaction. Methamphetamine, yes. Cigarettes, probably no. A carton of Marlboros, that's not just inherently illegal. And then we say, okay, well, was the manner of the sale illegal? Well, they didn't put a stamp on it. You're supposed to do that. You can't sell it without the stamp. So yes, it seems like a straightforward A2B. Well, it also, it's illegal goods, illegal services, unlawful activities. You also have the Contraband Cigarette Act, which makes them illegal, and that courts have uniformly held. How's that? I mean, that was pretty fast. A carton of Marlboro. How's that an illegal good under whatever that act is? Well, the act requires 10,000 or more, but that's clearly the circumstances in this case. 10,000 or more what? Unstamped cigarettes. If you can't sell 10,000 or possess, I believe, 10,000 or more. Does the government demonstrate here that they possessed, presumably that's at one time or something? No, courts have applied accumulatively, Your Honor. That's my understanding. What's the name of that act again? The Contraband CCTA. I'll look it up. I don't want to tax everybody's patience. Well, if you look at the Fourth Circuit case, the Hazan case that we cite, Your Honor, that pertains to that. I mean, it just, I must say, I mean, it seems like this is just a, you know, statutory interpretation. Maybe 201, this thing, to say it's the sale, that's the problem, not the good? In our view, the A provision is basically the default is what is going to apply in most cases. The B provision is a narrow provision intended to apply in certain circumstances. Does statute say any of this, default, narrow, general rule, exception? No, but I think it was enacted against that background. I don't know. I'm kind of, I'm pretty simple. I just sort of look at what the words say. Yes, in our view, the plain language of the statute, it's either the sale of cigarettes here or either illegal goods or illegal activities, as other courts have held in not the exact same but in similar contexts. That's fine. I'm done with that. It's going to be quick, I think. It is a problem that the forfeiture order is joint and several, isn't it? So I want to address that, Your Honor. It is not joint and several. If it were joint and several, Carmen would have been, the forfeiture order against Carmen would have included also the amounts that were forfeited for Smith as well as Koska. Do you know where the, I don't expect you to know the answer to this, but I can find it. I'm looking at the district court docket sheet. You don't happen to know what docket entry the forfeiture order is? So I can look at it. I do, Your Honor. It is docket, I believe, 659. Yes, 659. It's going to take me a minute to get back to it. It's true that the district court discussed joint and several liability, but in our view, the court actually, the manner in which the court determined forfeiture, the court did not apply joint and several. We made clear in our forfeiture motion. Let me take a look at it. My computer is acting up. I've got the document, but I can't scroll down. Well, the government, in a footnote in our brief, we made clear that we're not seeking joint and several liability. See, the old way is the better way. I mean, look at all this. I can't even find the patent, but here you go. And if the court had ordered joint and several liability, it would have ordered the full amount to each of the defendants here. And that's not what the court did. It only ordered the amount for Carmen that was attributable to YKTR. And in our view, that is consistent with Honeycutt. Honeycutt holds that the forfeiture is... Well, Your Honor, Honeycutt held that in the drug forfeiture statute, which has similar language, and we do agree that Honeycutt does apply to the forfeiture statute at issue here, even though that wasn't directly at issue in Honeycutt. The statutes are similar enough that the Honeycutt standard does apply. So the district court could only order forfeiture in the amount that Carmen obtained. And Carmen obtained all the money that came through YKTR, the business that she ran with her husband, Mr. Maddox. Is it the gross proceeds? Well, that's a different issue. Is it profit? So that's the statutory issue that Your Honor was discussing earlier. Oh, yeah. And so that's actually a separate issue from... That's a significant issue. Well, I think the first issue that the court needs to determine is, because Ms. Carmen does raise Honeycutt in her reply, is whether she obtained the money under Honeycutt. And then from what she obtained, do you, under the statutory issue that we just discussed, do you do gross or net? And in our view, she obtained all of the proceeds, which I believe were $23 million, during the time of the domestic conspiracy. Because she was an integral member of this organization. She helped run YKTR. She and Maddox ran the business. She hired and fired and reprimanded employees. She ran the phones. She instructed employees. No, I would agree, looking at the language of the district court order, that what the district court... And Ms. Elver may wish to address this, but I don't see what the district court is doing is seeking to impose joint and several liability. You can forget about that, I think. Thank you, Your Honor. We think that Honeycutt, that the forfeiture order is consistent with Honeycutt, because in contrast to Honeycutt, where you had two brothers, one of whom owned the business and one of whom just worked there as a salaried employee, here, Ms. Carman fully helped run the business, was a 50% owner, and profited personally from the business. Well, I mean, the order seems to make an individualized award. Yes, Your Honor, an individualized... Yes, yes. Unless the court has any additional questions, we'll rest on our brief. You've done a lot of work in this case, it looks like, a 90-page brief, and all on your own here. Thank you. We hope it was helpful, Your Honor. If I may, I'd like to just address a couple of the issues that were raised. First, with respect to the bootstrapping of the Jenkins Act to mail-or-wire fraud. I share your concerns, Your Honor, and I think that there is no difference in this case. I think that there are no additional elements that were shown that support mail-or-wire fraud that aren't covered by the Jenkins Act. Mr. Palateri just said that there is no intent requirement in the Jenkins Act offense, whereas for wire fraud, you know, there is a very serious intent requirement. Intend to, you know, trick somebody out of money, basically. And they weren't tricking anybody out of any money. Well, but if we're just talking about the two offenses and why one should not be overly alarmed about the felonization of this conduct, the answer is, well, you had to have this pretty bad intent, whereas for the Jenkins Act, you didn't. But there is no line then, because that could be true for anybody who failed to file a Jenkins Act report. There is no distinction about laziness versus doing it intentionally. If you don't file a Jenkins Act report, it's a violation. Right, but that's not true of wire fraud. You had to have omitted to file for a deceptive purpose, as opposed to, you know, it got lost under a bunch of stuff in your desk. That's true, but I think in this case, as I had previously argued, I don't think that there was a specific intent to deprive anybody of any property. On that point, I mean, this Pesquitero or whatever it is case from the Supreme Court, that seems to be a real problem for you, because the court there said that the Canadian authorities who lost the customs revenue, that that entitlement to the custom payment was itself property, and then they were deprived of that. And I think the distinction of that case is that they actually owed the tax, and in this case, my client didn't owe the tax. It's the consumer that owed the tax. And I'm about to run out of time, and I very quickly want to address the Honeycutt issue in that in Honeycutt, Ms. Carmen has been held responsible for the entire conspiracy of the entity. And under Honeycutt, I don't think that that's consistent. I think under Honeycutt, she should only be responsible for what she actually received. And the government went through great detail to determine that the distributions that she received as a 50% owner, she never had control. There was no evidence to suggest that she had entire control over the entire proceeds of that entity. What you're objecting to is really not joint and several liability. What you're objecting to is the basis on which the district court determined her share. What the total judgment as to her should be. But it wasn't, what was applied to her at the district court level wasn't a share. It was everything. I understand. It was half. No, it was the whole. The $35 million was for the entire proceeds. And based on the 8th amendment $17 million was awarded. That's correct. But the cutting it in half was an 8th amendment argument to not exceed the excessive fines clause. It was not based on the fact that she was a 50% owner. The district court, it may have been based on an excessive fines argument. But the district court was looking at the degree of her participation. That's what he says he was looking at. Fair enough. But I think ultimately he intended prior to getting to the 8th amendment argument, he was holding her responsible for the entire proceeds of the entire company. That's not where he ended up. That's true. Thank you very much. Thank you, Your Honors. To pick up on what appears to be one of the more pressing issues, this notion of intent and this prophylactic application of the Jenkins Act. Again, I think that has particular emphasis upon my client in this case. He was charged with conspiracy to participate in a fraud in which the predicate crime is this prophylactic statutory violation that the government has conceded can be committed itself without any intent. Right. But prior fraud takes more. It takes intent to deceive. They're saying they alleged to prove that. Indeed. And I think I would take it the other way. I don't think that adding the wire fraud washes through and imputes some notion that they met a higher standard. Indeed, what I think happens is you had a jury faced with the discrete question in some of the counts. Was the Jenkins Act violated? You then had the jury presented with a more esoteric question in the counts that pertain to my client knowingly enter into a conspiracy with individuals who possess the specific intent to violate a predicate statute, even though my client, they did not have evidence to demonstrate that he possessed any of that requisite intent. This is why it drives to our point about whether and to what extent there was substantial harm to him being tried with these other individuals. Without that, the logical connection that Your Honor is reaching in order to breach the gap between the problem that you perceive in terms of how do we get to felony criminal culpability, vis-a-vis a statute that in its prophylactic application, violation of that prophylactic application yields only a misdemeanor violation, is breached in this case as it relates to my client only because he's in a position of being alleged to have violated these mail fraud statutes in first inception. Thank you. Thank you. May it please the Court, I'd like to address just a couple remaining issues about loss as it applies to Mr. Maddox. First, on the burden of proof. The burden of proof is not on the defendant to prove the amount of loss. The burden is always on the government to prove the amount of loss. What happened here in this case was not that there was some shifting of burden of proof like in an employment case under McDonnell Douglas, but the judge accepted the government's premise whole, that because of the loss of the defendant, we went from a state where every bit of the taxes would have been collected to a point where none of the taxes would have been collected. Is that specific argument made to the District Court that, hey, even if you believe these state officials that they would have tried to get the money, it's not realistic to think they would have gotten every penny of it? Yes, exactly, Your Honor. That was briefed and argued to the Court. Why wouldn't that be your burden? I mean, sure, it's the government's burden to show the amount of loss, but in a standard burden of proof, if you're trying to show mitigation, that's a defendant's burden in that context. Wouldn't it be your burden to come forward with some evidence that the government would not have collected the full amount? It's not really mitigation in the way that we think of it in a civil case. In a civil case, there is a burden of proof to show here, and the sentencing rules are clear that proving between $1 and $2 and $3 is always the government's burden. It remains the government's burden here. And if they don't make that showing that it's $3 instead of $1, then it's $1, regardless of what I do to put on proof. Despite the fact that the government maintains, in this case, the overall burden to show loss, there are various scenarios under the guidelines where it becomes a defendant's burden to come forward with evidence. I'm just suggesting this is probably one of those. I understand the point you're on. Thank you. Thanks. We appreciate the argument that all of you have given. We'll consider the case carefully. With respect to all the defense lawyers, Ms. Elver, Mr. Napolitano, and Mr. Wicker, I see that you're all appointed under the Criminal Justice Act. We appreciate very much your having accepted the representations, and we appreciate the advocacy you've given on behalf of your clients. Thank you. And with that, I believe there are no more argued cases, and the clerk may adjourn the court.